UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TANVEER ALI,

Petitioner,

v.

JULIO HERNANDEZ et al.,

Respondents.

CASE NO. 2:26-cv-02965-DGE

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS BY ORDERING INDIVIDUALIZED BOND HEARING (DKT. NO. 1)

This matter comes before the Court on Petitioner Tanveer Ali's petition for writ of habeas corpus. (Dkt. No. 1.) Having reviewed the petition, the return memorandum (Dkt. No. 4), the traverse (Dkt. No. 7), and all supporting materials, the Court GRANTS the petition and ORDERS Respondents to provide an individualized bond hearing.

## I. BACKGROUND

### A. Factual Background

Petitioner is a native and citizen of Pakistan. (Dkt. Nos. 1 at 5; 1-2 at 1.) Petitioner entered the United States on April 2, 2025, through Mexico without inspection, seeking to travel to Canada to petition for asylum. (Dkt. Nos. 6 at 1; 1 at 5; 1-2 at 2.) On April 12, 2025,

Petitioner was apprehended by Canadian border agents and was turned over to United States Customs and Border Protection ("CBP") officers who then took him into custody pursuant to an I-200, Warrant for Arrest of an Alien. (Dkt. No. 6 at 2.) That same day, CBP served Petitioner with a Notice to Appear, with a hearing set for May 13, 2025. (Dkt. Nos. 6 at 2; 1-4 at 1–3.) The next day, Petitioner was booked into the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. No. 6 at 2.)

On July 16, 2025, Petitioner completed his application for asylum in the United States. (Dkt. No. 1 at 5.) On October 27, 2025, Petitioner appeared, with counsel, at an individual calendar hearing where the immigration judge determined the Petitioner was ineligible for asylum and ordered him removed to Pakistan. (Dkt. Nos. 1 at 5; 4 at 4; 6 at 2.) The immigration judge determined, among other things, that Petitioner did not rebut the presumption of ineligibility established by the Circumvention of Lawful Pathways (CLP) Rule.[1] (Dkt. No. 1 at 5.) On November 25, 2025, Petitioner filed a timely appeal with the Board of Immigration Appeals ("BIA"), which remains pending.[2] (Dkt. No. 1 at 5–6; 6 at 2.)

On February 6, 2026, Petitioner filed a Bond Redetermination Request with the Immigration Court. (Dkt. No. 6 at 2.) On February 17, 2026, the immigration judge ruled the Immigration Court lacked jurisdiction to consider bond because Petitioner is subject to mandatory detention, but alternatively, would still deny bond even if the Immigration Court had jurisdiction because the immigration judge deemed Petitioner a flight risk. (Dkt. Nos. 1 at 6; 4 at

[1] Petitioner identifies this Rule was recently deemed unlawful. *See E. Bay Sanctuary Covenant v. Trump*, No. 18-CV-06810-JST, 2026 WL1256873, at *8 (N.D. Cal. May 7, 2026) ("Because the Rule bars individuals who did *not* seek protection in a third country, *cannot* show exceptionally compelling circumstances, and *cannot* rebut presumption of ineligibility, it unlawfully conflicts with the asylum statute." (footnote omitted)).

[2] Petitioner filed his appeal brief on July 7, 2026. (Dkt. No. 1 at 6.) The Department of Homeland Security has yet to submit its brief. (*Id.*)

4; 6 at 2.) Petitioner did not appeal this decision and remains detained pending the BIA's resolution of his appeal of the removal order. (Dkt. Nos. 1 at 6; 6 at 2.)

### B. Procedural Background

Petitioner filed a petition for writ of habeas corpus on August 20, 2026, asserting his prolonged detention without an individualized bond hearing violates due process. (Dkt. No. 1 at 8–9.) Respondents primarily argue Petitioner should be required to exhaust his administrative remedies through the BIA before seeking habeas relief. Respondents also argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), that his continued detention is not unreasonably prolonged, and in the alternative, that the immigration judge ruled that Petitioner was a flight risk. (Dkt. No. 4 at 1–2.) Petitioner filed a traverse arguing he is not required to exhaust administrative remedies and due process requires an individualized hearing to determine whether his detention has become unreasonably prolonged. (Dkt. No. 1 at 2–6.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III. ANALYSIS

### A. Administrative Exhaustion Is Not Required Here

Respondents argue the Petitioner should exhaust his administrative remedies through the BIA before seeking relief in this Court. (Dkt. No. 4 at 4.) Respondents further state, "[t]o the extent Petitioner might argue exhaustion of administrative remedies is not a jurisdictional prerequisite for habeas petitions, courts still generally 'require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking [such] relief.'" (*Id.*) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). "A district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies[.]" *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

Prudential exhaustion may be required where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990). However, even if all three factors weigh in favor of exhaustion, a court may still waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Sec. & Exch. Comm'n v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981). The exhaustion requirement may also be waived where the petitioner is "challenging issues other than the BIA's ruling on removability. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

Here, the first factor does not weigh in favor of requiring prudential exhaustion. Respondents argue the BIA "has subject matter expertise for individual immigration bond decisions" and this Court would benefit from an administrative appellate record because the immigration judge made an alternative factual finding that the Petitioner is a flight risk. (Dkt. No. 4 at 5–6.) Petitioner argues no special expertise is required to determine if his detention is unreasonably prolonged under the United States Constitution.[3] (Dkt. No. 7 at 6.) The Court acknowledges the BIA has subject-matter expertise for individual immigration bond decisions; however, an administrative appellate record is not necessary to resolve purely legal questions such as whether Petitioner is entitled to an individualized bond hearing based on the length of his current detention. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017); *see Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, *7 (D.R.I. Dec. 3, 2025) (the petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile").

The second factor is neutral on whether to enforce prudential exhaustion. Respondents argue this factor weighs in favor of exhaustion "because there is no question that where it has jurisdiction, the Immigration Court has authority to deny bond if he is a flight risk." (Dkt. No. 4 at 6.) They further argue allowing relaxation of the exhaustion requirement "would permit other detainees to directly appeal their alternative bond determinations to federal district court" without any further administrative appellate record. (*Id.*) Petitioner argues because his

[3] Petitioner also argues he is not required to exhaust administrative remedies because he "is not seeking a statutory bond hearing to challenge his detention under the provisions of the INA. Instead, his Petition . . . is pursuant to the rights granted to him under the U.S. Constitution." (Dkt. No. 7 at 2–3.)

challenge is to his prolonged detention, there is no applicable administrative scheme for him to bypass. (Dkt. No. 7 at 3.) Although Respondents are correct that relaxation of the prudential exhaustion requirement could encourage detainees to directly appeal to this Court instead of the BIA, the Court has serious doubts the BIA would meaningfully evaluate whether Petitioner should receive a bond hearing when § 1225 is implicated. The moving force behind detainees' bypassing the BIA and bringing their petitions directly to this Court is the immigration courts' repeated rulings that they lack jurisdiction over cases involving individuals detained pursuant to 8 U.S.C. § 1225.

As for the third factor, the Court finds it weighs against prudential exhaustion. Defendants argue the "BIA is capable of reviewing evidentiary findings and could preclude the need for judicial review." (Dkt. No. 4 at 6.) However, when the issue involves whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error.

Furthermore, "[c]ourts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal." *Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)).

Accordingly, the Court finds it appropriate to waive any requirement that Petitioner exhaust his administrative remedies prior to seeking habeas relief.

**B. Petitioner is entitled to a bond hearing under *Banda***

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to removal proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Although the Petitioner's detention is statutorily mandated under 8 U.S.C. § 1225(b), his continued detention must still comport with due process. In *Jennings v. Rodriguez*, 583 U.S. 281, 297–301 (2018), the Court found no statutory time limit or requirement for periodic bond hearings for those held in detention pursuant to § 1225(b). Importantly, the Court did not resolve the respondents' constitutional challenge to prolonged detention, including whether the Due Process Clause requires a bond hearing when detention becomes prolonged. *Id.* at 312. On remand, the Ninth Circuit declined to reach the issue of whether prolonged detention without a bond hearing violates the Due Process Clause; instead, it remanded to the district court to determine the minimum process constitutionally required. *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018). Notably, the Ninth Circuit stated, "[w]e have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Id.* at 256.

Neither the Ninth Circuit nor the United States Supreme Court have settled on a test for assessing the constitutionality of prolonged detention. In *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), the Court employed a case-specific, six-factor analysis to determine whether the petitioner's prolonged mandatory detention had become unreasonable, rather than

applying the three-factor framework established in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The Court declined to apply *Mathews*, explaining that its three-factor test is not "particularly probative of whether prolonged mandatory detention has become unreasonable in a particular place." *Banda*, 385 F. Supp. at 1106–07, 1118. Rather, the *Mathews* framework "balances the benefits or burdens of 'additional or substitute procedural safeguards'" and therefore does not resolve the more fundamental question of whether any procedure, such as a bond hearing, must be provided. *Id.* at 1107, 1118 (citing *Mathews*, 424 U.S. at 335).

Respondents argue the Petitioner's period of detention "considered in light of the relevant *Banda* factors applied by courts in this District, does not rise to the level of a constitutional violation" because his continued custody is directly tied to his own appeal before the BIA of his final order of removal. (Dkt. No. 4 at 2.) Confusingly, the Respondents subsequently state "[t]o analyze the reasonableness of prolonged immigration detention, courts in this District generally apply the three-factor test in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." (*Id.* at 7.) Respondents then proceed to apply the *Mathews* factors rather than the *Banda* factors. (*Id.* at 7–9.) As the Respondents note, although Petitioner was afforded a bond hearing, the immigration judge determined she lacked jurisdiction to grant bond because Petitioner was subject to mandatory detention. Having determined the immigration court lacked jurisdiction to grant bond, the immigration judge could not then alternatively adjudicate the merits of bond by finding that Petitioner presented a flight risk and, for that reason, bond would have been denied anyway. The alternative finding therefore did not cure the denial of a meaningful bond hearing. Because the Immigration Court first concluded it lacked jurisdiction to grant bond, the record lacks any indication Petitioner was afforded a meaningful opportunity to have the discretionary bond factors adjudicated. *See Barrios Osorio v. Bondi*, No. 2:26-CV-00317-JNW, 2026 WL 607765,

at *3 (W.D. Wash. Mar. 4, 2026) (the alternative finding was not supported by the record as the judge "did not consider any of the relevant factors typically considered on a bond determination."). Aside from a checked box indicating Petitioner is a flight risk, nothing in the record reflects the immigration judge meaningfully considered any factors to determine whether the Petitioner is a flight risk. (Dkt. No. 5-5 at 2–3.) Accordingly, the correct factors to apply here are those articulated in *Banda*.

The Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda,* 385 F. Supp. at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–859 (D. Minn. 2019)). The first factor, the total length of detention to date, is the most important factor. *Id.* at 1118. At the time of this order, Petitioner has been detained for approximately 17 and one-half months. Many courts in this district have found this length of time to be unreasonable. *See Id.* ("Petitioner has been in detention for approximately 17 months, which is a very long time."); *Cardozo v. Bostock*, No. C25-00871-TMC, 2025 WL 2592275, at *1–2 (W.D. Wash. Sept. 8, 2025) (finding petitioner's 12-to-13-month detention favored granting a bond hearing); *Maliwat v. Scott*, No. C25-00788-TMC, 2025 WL 2256711, at *2 (W.D. Wash. Aug. 7, 2025 ("nearly" 12 months); *Rahman v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom. Anisur R. v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1919252 (W.D. Wash. July 11, 2025) ("almost 12 months"); *Ashemuke v. ICE Field Off. Dir.*, No. C23-1592-RSL-MLP, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, No. C23-1592-RSL-MLP, 2024 WL 1676681 (Apr. 18, 2024) (11 months). "The longer mandatory detention

continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. C22-303-LK-MLP, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, No. 2:22-CV-0303-LK, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022).

Respondents also appear to acknowledge the Petitioner's detention has become prolonged, stating "Petitioner's detention has only recently become 'prolonged.'" (Dkt. No. 4 at 7.) Because the period of detention has become prolonged, the first *Banda* factor favors Petitioner.

The second *Banda* factor considers the likely duration of future detention. 385 F. Supp. 3d at 1118. The Petitioner has an appeal pending before the BIA that he submitted on November 25, 2025. (Dkt. No. 1 at 5.) Petitioner submitted his brief on July 7, 2026, but it appears Respondents have yet to file their brief. (*Id.* at 6.) It is unclear how long it could take before the BIA completes its review. Where "an appeal ha[s] already been filed," "courts [have] found that the length of appeal favor[s] the petitioner[.]" *Maliwat*, 2025 WL 2256711, *5 (collecting cases). Therefore, the second *Banda* factor weighs in favor of granting a bond hearing.

The Court turns to the third *Banda* factor, the conditions of detention. 385 F. Supp. 3d at 1118. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted). The Petitioner raises concerns regarding the conditions of his detention at the NWIPC in Tacoma, Washington and reports an overall decline in his physical and mental health. (Dkt. No. 1-2 at 1.) He describes inadequate sleep due to constant noise and the frequent arrival and departure of other detainees, as well as nightmares, painful headaches, humming in the ear, worsening memory, low energy, and changes in his personality tied to his confinement. (*Id.* at 1–5.) He also reports skin discoloration and itchiness, tooth pain, constipation caused by the

food served, and inadequate medical care and treatment to various conditions. (*Id.*) Respondents do not provide any information regarding the conditions of detention at the NWIPC. However, "[a]s courts have found, detention conditions at [the] NWIPC are 'similar . . . to those in many prisons and jails.'" *Maliwat*, 2025 WL 2256711, at *6 (citing *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing cases)). Petitioner provides some evidence supporting the similarity of the conditions at the NWIPC and those commonly found in penal institutions, particularly as to the resulting effects on his physical and mental health. Therefore, the Court finds the third *Banda* factor weighs in favor of granting a bond hearing.

Under the fourth and fifth *Banda* factors, the Court considers delays in removal proceedings caused by both the detainee and by the government. 385 F. Supp. 3d at 1118. Respondents contend the Petitioner has prolonged his detention by challenging his removal order. (Dkt. No. 4 at 9.) However, exercising one's right to appeal is not the same as intentionally causing delay. *See Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (legitimate challenges to removal does not undermine a claim that detention has become unreasonably prolonged). Petitioner argues any delay was caused by the Respondents, for example, the Petitioner's removal proceeding was set for May 13, 2025, but was not held until October 27, 2025, over six months after he was detained. (Dkt. No. 1 at 13.) Respondents do not respond to this argument, and it would be speculative to assume the Respondents caused delay without knowing the reason the

removal hearing was held so long after Petitioner's detainment. Therefore, these two *Banda* factors are neutral.

The final *Banda* factor the Court considers is the likelihood that the removal proceedings will result in a final order of removal. 385 F. Supp. 3d at 1118. Because Petitioner's appeal of his removal order remains pending, and because Petitioner asserts the immigration judge relied on the CLP Rule in denying his asylum application and that the Rule has since been deemed unlawful by a district court, assessing this factor at this stage would be speculative. Thus, the sixth *Banda* factor is neutral.

Having considered and weighed the *Banda* factors, the Court concludes Petitioner's prolonged detention violates due process.

**C. Bond Hearing**

Petitioner "requests that the Court declare his continued detention unconstitutional as applied to him, and to order his release; or, alternatively hold a bond hearing where the government must prove that any continued detention is justified by clear and convincing evidence." (Dkt. No. 1 at 3) (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018)). Respondent argues Petitioner's detention comports with due process, that he cannot show his detention has become indefinite, and that he is not entitled to a second bond hearing while his detention continues pending removal proceedings. (Dkt. No. 4 at 3–4.) Respondents do not discuss the appropriate standard for a bond hearing in the event one is ordered.

*Singh* held "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas*[4] hearing." 638 F.3d at 1203. Although the standard articulated in *Singh* arose in the context of a now rejected statutory right to a bond hearing under § 1226(c), its procedural requirements were grounded in the Due Process Clause and the detainee's substantial liberty interest. *Id.* at 1199. The United State Supreme Court's rejection of that statutory right therefore does not undermine *Singh's* constitutional reasoning. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Where due process itself requires a bond hearing, there is no basis for affording fewer procedural protections than those *Singh* found necessary to protect the same liberty interest. Other courts in this district have reached similar conclusions. *See, e.g.*, *Dovlatov v. Hernandez*, No. 2:26-cv-00826-JNW, 2026 WL 1030454, *3 (W.D. Wash. Apr. 16, 2026); *Rahmani v. Bondi*, No. C26-362-KKE, 2026 WL 638364, *6 (W.D. Wash. March 6, 2026); *Toktosunov v. Wamsley*, No. 2:25-cv-1724-TL, 2025 WL 3492858, *6 (W.D. Wash. Dec. 5, 2025).

## IV. ORDER

Accordingly, for the reasons articulated herein, the Court finds and ORDERS that Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED.

1. Petitioner's prolonged detention without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment.

2. Within FOURTEEN (14) days of this order, Respondents must provide Petitioner with an individualized bond hearing. At the bond hearing,

[4] *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), held "that aliens facing prolonged detention while their petitions for review of their removal orders are pending are entitled to a bond hearing before a neutral immigration judge." *Singh*, 638 F.3 at 1200. However, *Casas*' abrogation was recognized by *Avilez v. Garland*, 69 F.4th 525, 535 (9th Cir. 2023).

Respondents carry the burden of proving by clear and convincing evidence that Petitioner presents a flight risk or a danger to the community to justify his continued detention. In the event that a bond is granted, Respondent is ORDERED to release Petitioner within twenty-four (24) hours of the hearing subject to reasonable conditions of supervised release.

3. If the individualized bond hearing is not conducted within fourteen days of this order (unless Petitioner requests a continuance), Petitioner MUST be released no later than the fifteenth day after this hearing under appropriate conditions of supervised release.

4. Petitioner SHALL not be transferred from this District while he awaits his bond hearing.

5. Petitioner and Respondents MUST file a status report on the status of Petitioner's bond hearing no later than FIFTEEN (15) days from this order. The status report MUST detail if and when the bond hearing occurred, if bond was granted or denied and, if denied, the reasons for that denial.

6. Petitioner seeks an award of fees. (Dkt. No. 1 at 19.) Petitioner is GRANTED leave to file a motion for attorney fees. The motion for fees shall identify the legal authority supporting the award of fees and shall be filed **no later than December 28, 2026**.[5] The parties are strongly

[5] In a previous matter, Respondents have requested, and the Court granted, a motion to stay the enforcement of any award of attorney fees pending the Supreme Court's decision in *Palacios v. Liggins*, No. 25-1223. *See Douangdala v. Bondi*, Case No. 2:26-cv-00963-DGE, 2026 WL 2516555 (W.D. Wash. Aug. 26, 2026).

encouraged to meet and confer regarding fees before Petitioner files a motion for attorney fees.

The Clerk is directed to calendar this event and close the matter.

Dated this 25th day of September, 2026.

David G. Estudillo
United States District Judge